UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00234-FDW-SCR

| CARSTAR FRANCHISOR SPV LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| DAVID M ROBERTS<br>FOCUS ADVISORS, INC.<br>CHRISTIAN J LANE, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue. (Doc. No. 14). This matter has been fully briefed, (Doc. Nos. 15, 19, 20), and is ripe for ruling. Having carefully considered the Motion and the record, Defendants' Motion is **GRANTED IN PART** to the extent it seeks the transfer of this case to the United States District Court for the Northern District of California, and it is **DENIED IN PART AS MOOT** to the extent it seeks the dismissal of Plaintiff's Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

### I.  BACKGROUND

According to the Complaint, Plaintiff is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. (Doc. No. 1, p. 1). Plaintiff owns certain trademarks, which they franchise to persons and entities who then open automobile collision repair facilities. (Doc. No. 1, p. 3). Defendant Focus Advisors, Inc. ("Focus") is a California corporation with its principal place of business in Oakland, California. (Doc. No. 15, p. 6). Defendant David M. Roberts ("Roberts") is a citizen of California and acts as Focus's Chief Executive Officer and

1

Chief Financial Officer. (Doc. No. 1, p. 2). Defendant Christian J. Lane ("Lane") is a citizen of California and is a Partner of Focus. (Id.). Focus is a merger and acquisition ("M&A") advisory firm that represents collision repair multi-shop operators ("MSO") from all over the United States in the sale of their businesses and assets. (Doc. No. 15, p. 6). Focus operates a website displaying information on Focus's services and clients. (Doc. No. 15, p. 7).

On April 25, 2023, Plaintiff filed a Complaint, (Doc. No. 1), against Defendants alleging Defendants committed knowing, willful, and deliberate infringement of a federally registered trademark under the Lanham Act, 15 U.S.C. §§ 1114(1), resulting in lost revenue, lost profits, and injury to Plaintiff's reputation and good will. Plaintiff also alleges Defendants engaged in common law unfair competition, causing Defendants to receive substantial profits and benefits to which they are not entitled. Finally, Plaintiff asserts Defendants' alleged actions violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1(a)), as well as the California Business and Professions Code § 17200. In short, Plaintiff contends Defendants knowingly, willfully, and deliberately engaged in the unauthorized use of Plaintiff's CARSTAR® trademarks and exploited Plaintiff's goodwill and reputation by displaying the trademarks on Focus's website and a display board at a business conference in Virginia. (Doc. No. 1 pp. 4–10).

In response the Complaint, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. No. 14). Defendants assert this Court lacks personal jurisdiction over them because they do not have any connection to North Carolina, and they have not targeted North Carolina's market for business purposes. In the alternative, Defendants move for transfer of this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Plaintiff filed its Memorandum in Opposition to Defendants' Motion on June 5, 2023, (Doc. No. 19), objecting to the motion in its entirety and arguing Defendants' contacts are sufficient to confer jurisdiction in this case. Defendants filed their Reply on June 12, 2023. (Doc. No. 20). Accordingly, the Motion is now ripe for review. The Court first addresses the Motion to Transfer Venue.

## II. STANDARD OF REVIEW

Venue is appropriate in "a judicial district in which any defendant resides . . . in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Upon motion by, or consent of, the parties, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id. at § 1404(a)–(b). District courts have discretion to adjudicate motions for transfer based on notions of fairness and convenience. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988).

In exercising this discretion, "the plain language of the statute requires that the Court balance the convenience to the parties and witnesses, as well as the interests of justice." Jim Crockett Promotions, Inc. v. Action Media Grp., Inc., 751 F. Supp. 93, 95 (W.D.N.C. 1990). In evaluating whether to transfer a case to another jurisdiction under § 1404, a court must weigh eleven factors to determine whether the defendants have met their burden to transfer venue. Id. at 96. The factors to be considered are:

1. The plaintiff's initial choice of forum;
2. The residence of the parties;
3. The relative ease of access of proof;
4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
5. The possibility of a view;

3

6. The enforceability of a judgment, if obtained;
7. The relative advantages and obstacles to a fair trial;
8. Other practical problems that make a trial easy, expeditious, and inexpensive;
9. The administrative difficulties of court congestion;
10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with state law that must govern the action; and
11. The avoidance of unnecessary problems with conflict of laws.

Id. A defendant "carries a particularly heavy burden," as "the motion will not be granted if a transfer would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered." Id. at 95 (citing Phillips v. S. Gumpert Co., Inc., 627 F. Supp. 725, 727 (W.D.N.C. 1986). The above factors fall into three categories: (1) factors that favor neither party; (2) factors that favor Defendant; and (3) factors that favor Plaintiff. Id. at 98. The Court must analyze the eleven factors based on quality, not just quantity. Id. at 96.

### III. ANALYSIS

**A.  Section 1404**

Section 1404 allows "a district court [to] transfer any civil action to any other district where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); In re Carefirst of Maryland, Inc., 305 F.3d 253, 255 (4th Cir. 2002). Section 1391, which outlines the guidelines for establishing venue, states "a civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Focus is incorporated in, and has its principal places of business in, California. (Doc. No. 15, p. 6). Further, all of Focus's employees, including Defendant Roberts and Defendant Lane, live in or near Oakland, California. (Id.). While Plaintiff is a corporation headquartered in Delaware with its principal place of business in North Carolina, a review of Plaintiff's Complaint similarly indicates Focus is a California

4

corporation with its principal place of business in Oakland, California, and Defendant Roberts and Defendant Lane are both domiciled in California. (Doc. No. 1, p. 2). Because all three Defendants reside in California, transfer of this case would not violate §1404(a) because venue is proper in the Northern District of California. 28 U.S.C. § 1391(b)(1). The Court now turns to the balancing test.

Defendants argue nine of the eleven factors support transfer, two are neutral, and none oppose transfer. (Doc. No. 15, pp. 15-17). Thus, the Court will address each of the eleven factors in turn.

### i. Plaintiff's Initial Forum Choice

"Plaintiff chose North Carolina as its choice of forum, and courts have given great weight to this factor of the analysis." Scenic Mktg. Grp., 2012 WL 113664, at *1; see also Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984); Com. Equip Co., 738 F. Supp. At 976 ("[A] court ordinarily should accord the plaintiff's choice of forum great weight."). When the plaintiff selects a foreign forum and the cause of action bears little relation to that forum, however, such decision is not entitled to the same deference. See JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007); see also DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 803 (4th Cir. 2013). Even then, in trademark cases, the plaintiff's choice of forum may still be entitled to deference when the plaintiff is conducting business in that forum. See Kiss My Face Corp. v. Bunting, No. 02CIV2645, 2003 WL 22244587, at *4 (S.D.N.Y. Sept. 30, 2003) ("Where there is ongoing business activity in the chosen forum, however, plaintiff's choice of forum is given more deference than it would if the connection to this forum were truly de minimis.") (quotation omitted); cf. PlayVision Labs, Inc. v. Nintendo of Am., Inc., No. 3:14-CV-312-GCM, 2014 WL 6472848, at *2 (W.D.N.C. Nov. 18, 2014) (ordering transfer of a case when "nothing to do with the development or manufacture" of the controversy occurred in North Carolina) (emphasis added).

5

The matter before this Court involves allegations of trademark infringement. Therefore, while this matter's only relation to this forum is that Plaintiff has its principal place of business here, this Court must nevertheless give deference to Plaintiff's initial choice of forum. Thus, this factor weighs slightly against transfer.

ii. **Residence of Parties**

The second factor weighs slightly in favor of transfer because all three Defendants reside in California, and Defendants' employees and business records are located in California. (Doc. No. 15, p. 6). See, e.g., Jim Crockett, 751 F. Supp. At 96 (holding this factor favored transfer because "two [of three] Defendants are located in New York, and the records of those corporations are also in New York,"); Gilbert v. New Line Prods., Inc., No. 5:08-CV-223-H, 2009 WL 10666130, at *3 (E.D.N.C. Mar. 31, 2009) (same, where twenty-nine defendants and most of the potential witnesses resided in the Los Angeles area rather than in North Carolina). Further, business entities "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1931(c)(2). Here, it is unclear whether this Court has personal jurisdiction over Defendants.[1] Therefore, this factor weighs in favor of transfer.

---

[1] Plaintiff argues Defendants' contacts with North Carolina are sufficient to satisfy the minimum contacts requirement because Defendants have closed M&A business transactions in the forum and advertised the transactions on their website "with an intent to engage North Carolina businesses in interactions that Defendants hope will lead to business." (Doc. No. 19, p. 14). Conversely, Defendants argue they have not targeted the forum for business purposes, and they tend to give less consideration to conducting business in North Carolina than other large markets because most MSOs have already been consolidated in the state. (Doc. No. 15-2, pp. 3-4). Defendants further argue their website targets MSOs in all markets, not only North Carolina. (Id.). While the Court declines to analyze whether this Court has personal jurisdiction here, upon review of the record, it is unlikely Defendants' business transactions and information displayed on their website are sufficient to satisfy the minimum contacts test.

### iii. Relative Ease of Access to Proof, Availability of Compulsory Process for Attendance of Witnesses, and the Cost of Obtaining Attendance of Willing Witnesses

When the moving party fails to provide sufficient evidence that most of the evidence is in another jurisdiction, or that transporting witnesses to the jurisdiction would be costly, transfer is not appropriate. SAS Inst., Inc. v. World Programming, Ltd., 468 F. App'x 264, 267 (4th Cir. 2012) (per curiam) (holding that failure to demonstrate all or most of the evidence was in another county and that transporting "myriad" foreign witnesses to North Carolina would be costly meant dismissal on grounds of forum non conveniens was inappropriate). Here, Defendants argue the employees who have knowledge pertinent to this matter, and the employees responsible for the development and marketing of the website involved in this dispute, all reside in California. (Doc. No. 15, p. 16). Further, the business records are kept and maintained in California. (Id.). Thus, Defendants assert that they will incur expenses transporting and housing their witnesses in North Carolina. (Id.). Plaintiff responds by noting this matter involves "online false designation of origin and unfair competition claim." (Doc. No. 19, p. 20). Thus, Plaintiff argues that due to the nature of the claims, "key evidence will be almost entirely electronic, and the location of the server is largely irrelevant." (Id.). Even if Plaintiff's assertion is true, however, the employees that maintain the business records and website all reside in California, and it is likely they will be required to be transported and housed in North Carolina as witnesses.

Plaintiff further asserts its key witnesses will likely be Focus's North Carolina clients that account for ten auto collision shops in North Carolina—seven in Charlotte and three in Greensboro. (Doc. No. 19, p. 20). However, Plaintiff also contends it will likely call consumers who may have been misled or confused by Defendants' alleged misuse of Plaintiff's trademark on the website, and those consumers could live in many different states. (Id.). Further, the allegation of misuse of trademark pertaining to the display board at a convention will likely involve witnesses

7

from Virginia and other states as well. Finally, Plaintiff references Focus's representations claiming to have led transactions involving more than 300 repair shops in many different states. (Id.). Thus, it is likely Plaintiff's witnesses will come from many different states regardless of whether this matter is heard in North Carolina or California. For the reasons above, this Court finds the third and fourth factors favor transfer.

### iv. The Possibility of a View

Defendants concede this factor is neutral, (Doc. No. 15, p. 16), and Plaintiff combines this factor with others as "essentially neutral." (Doc. No. 19, p. 21). Thus, the Court agrees that this factor is neutral, as a view will not be relevant in this case.

### v. The Enforceability of a Potential Judgment

Although Defendants do not own property in North Carolina, (Doc. No. 15, p. 6), a judgment obtained in either the Western District of North Carolina or in the Northern District of California would be enforceable nationwide. As such, this factor is neutral.

### vi. Relative Advantages and Obstacles to a Fair Trial

Defendants argue this factor favors transfer because it is likely more witnesses will be able to appear for live testimony in California. Plaintiff groups this factor in with others as "essentially neutral." (Doc. No. 19, p. 21). Any federal court is capable of providing a fair trial, and thus, this Court agrees with Plaintiff that this factor is neutral.

### vii. Other Practical Problems that Make a Trial Easy, Expeditious, and Inexpensive

As discussed above, trial in California is likely to require less total expense due to the location of the parties, witnesses, and business records. Plaintiff will likely be required to transport North Carolina witnesses to California, however, as stated above, Plaintiff has expressed the intention to bring forth witnesses that were confused or misled by the alleged misuse of Plaintiff's

8

trademarks on Defendants' website, (Doc. No. 19, p. 20), and these witnesses could come from many different states. Further, witnesses that were confused or misled by the alleged misuse of Plaintiff's trademarks at the convention in Virginia are likely to come from different states as well. Thus, Plaintiff will be required to transport witnesses from other states regardless of the forum. Accordingly, this factor weighs slightly in favor of transfer.

### viii. Administrative Difficulties of Court Congestion

Defendants argue this factor favors transfer by providing Federal Court Management Statistics showing the Northern District of California moves faster through civil litigation than the Western District of North Carolina. (Doc. No. 15, p. 17). Yet, this differential in actions translates to roughly 57 days (33 months vs. 31.1 months) difference in the median number of months from filing to trial in the two districts. (Id.). Thus, the relative court congestion of each district is not significant, and this factor is neutral.

### ix. Interest in Having Localized Controversies Settled at Home

Defendants argue the tenth factor favors transfer because Plaintiff mainly alleges violations of the Lanham Act, and any North Carolina common law and state-law claims "are substantially the same under California law." (Doc. No. 15, p. 17). Although the Northern District of California having to apply North Carolina law weighs against transfer, Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947), Plaintiff has not alleged *any* facts indicating this is a localized controversy. Further, Plaintiff asserts in its Complaint that the allegations are in violation of California law (California Business & Professions Code § 17200) as well as North Carolina law. (Doc. No. 1, p. 1). Thus, the Court agrees with Defendants that the tenth factor favors transfer.

### x. Avoidance of Unnecessary Problems with Conflict of Law

Neither party has indicated this case presents any conflicts of laws issues. Accordingly, this factor is neutral.

### IV. CONCLUSION

In conclusion, the Court finds five of the § 1404 factors favor transfer, one factor goes against transfer, and five factors are neutral. Accordingly, the Court holds transfer of this matter to the United States District Court for the Northern District of California is appropriate under § 1404 and controlling law.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, to Transfer Venue, (Doc. No. 14), is **GRANTED IN PART**, to the extent it seeks transfer of this case to the Northern District of California. Accordingly, the Court hereby **ORDERS** this matter transferred to the Northern District of California.

**IT IS FURTHER ORDERED** that Defendants' Motion, (Doc. No. 14), is **DENIED IN PART AS MOOT**, to the extent it seeks dismissal of this action for lack of personal jurisdiction and improper venue.

**IT IS SO ORDERED.**

Signed: July 18, 2023

_____
Frank D. Whitney
United States District Judge